UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SIDNEY DINGES and <br> BRENDA DINGES, <br><br> Plaintiffs, <br><br> v. <br><br> SUPERVALU FORT WAYNE <br> DISTRIBUTION CENTER, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO. 1:04-CV-352-TS <br> ) <br> ) <br> ) <br> ) <br> ) |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Partial Summary Judgment [DE 21], filed by the Defendant, Supervalu Fort Wayne Distribution Center, on September 1, 2005. The Defendant contends that it is entitled to summary judgment on Plaintiff Sidney Dinges's claim for loss of future earning capacity because the Plaintiff has not presented any expert opinion to establish that the injury he sustained at the Defendant's distribution center has impaired his future earning capacity as a truck driver. The Plaintiff argues that whether he has suffered lost earning capacity due to the Defendant's negligence is a genuine issue of fact.

**BACKGROUND**

On September 17, 2004, the Plaintiffs filed their Complaint alleging that the Defendant's negligence or carelessness caused him to incur injuries to his left foot while on the Defendant's premises as a business invitee. Sidney Dinges sued for pain and emotional distress, medical costs, loss of income, and lost future earnings. Brenda Dinges sued for loss of consortium, services, support, and economic assistance as well as lost retirement funds, bonuses, and vacation time. On

November 2, 2004, the Defendant answered the Complaint.

On September 1, 2005, the Defendant moved for summary judgment on the Plaintiff's claim for loss of future earning capacity. On October 3, 2005, the Plaintiff responded and on October 21, the Defendant replied. The Defendant also filed a Motion to Strike [DE 36] certain materials submitted by the Plaintiff in response to its Motion for Partial Summary Judgment. On November 4, the Plaintiff responded to the Motion to Strike.

## MOTION TO STRIKE

The Defendant moves to strike the testimony of Daniel Logan, Kathy Thiem, Kenneth White, and Daryl Novak and Responses to Requests for Admission because they address matters that are not relevant to the limited issue presented in the Defendant's Motion for Partial Summary Judgment. The Defendant also requests that certain statements of Dr. Suzanne Stevens be stricken because she is not a vocational expert, and thus, not qualified to testify as to whether the Plaintiff's injury makes it unsafe for him to operate a truck. The Defendant lodges a similar complaint against the testimony of Alan Shipe and John Campbell, arguing that "neither is qualified to offer opinions on a matter more appropriately left for a vocational expert." (DE 37, Def.'s Mem. 3.)

The Plaintiff responds that the accident facts are material and relevant to show that the Plaintiff suffered significant injuries that reasonably relate to his inability to continue his occupation as a truck driver. The Plaintiff argues that the opinions offered by Shipe and Campbell do not call for the expertise of a vocational expert and meet the requirements of Federal Rule of Evidence 701. As to Dr. Stevens's testimony, he contends that it is not outside her realm of expertise to opine whether the Plaintiff could operate a motor vehicle given the condition of his foot.

The Court will address the arguments regarding the admissibility of testimony during its discussion of the merits of the Defendant's Motion for Partial Summary Judgment.

**STATEMENT OF FACTS**

Sidney Dinges was an independent truck driver who owned his own semi-tractor. He worked full time for Cecil Holler, LLP, delivering chickens and turkeys to various businesses around the country. On November 14, 2003, the Plaintiff drove from Virginia to Fort Wayne to deliver cargo to the Defendant, Supervalu Fort Wayne Distribution Center. While working in his assigned work area, a Supervalu employee ran a forklift over the Plaintiff's foot, knocking him to the floor. The Plaintiff was taken to Parkview Memorial Hospital where he was diagnosed with a fracture at the base of the left fifth metatarsal and a laceration at the base of the first and second metatarsals.

When he returned home to Virginia, the Plaintiff was treated by Suzanne Stevens, M.D., a board certified orthopedic surgeon. Dr. Stevens first saw the Plaintiff on November 21, 2003, upon referral from his primary care physician. X-rays revealed a comminuted fracture at the base of the fifth metatarsal and a nondisplaced stress fracture at the fourth metatarsal. Dr. Stevens assessed the Plaintiff as having a crush injury that caused broken bones to the fourth and fifth metatarsals and caused a laceration to the foot and injury to the plantar nerve running along the inside bottom of the left foot. She also noted that the Plaintiff had "decreased sensation on the plantar, or bottom, of the foot." (Stevens Dep. 12.) Dr. Stevens put a cast on the Plaintiff's left foot to help the fractures heal.

Dr. Stevens conducted follow-up examinations that revealed decreased sensation, or numbness, on the inside bottom of the foot, tenderness along the fracture site, and swelling. Dr. Stevens determined during her February 20, 2004, examination that the fracture of the fourth

3

metatarsal was completely healed and that the fracture of the fifth metatarsal was slowly healing. The Plaintiff told Dr. Stevens that he had tried to go back to work, but by the end of the day he had severe swelling and pain. (Stevens Dep. 83.) Dr. Stevens cleared the Plaintiff to return to work "if he felt he could tolerate his responsibilities that go with his job." (Stevens Dep. 28.) She thought he would have difficulty with heavy lifting, loading, and unloading, which were part of his normal duties as a truck driver. (Stevens Dep. 87.) Dr. Stevens left it up to the Plaintiff to determine if he was physically capable of doing all that was required at his job, including the lifting, and to advance his activities as tolerated. (*Id.*)

On April 2, 2004, Dr. Stevens examined the Plaintiff. Both of the fractures were healed, but the Plaintiff continued to have numbness on the bottom of his foot that showed no signs of improving. (Stevens Dep. 29, 31–32.) The Plaintiff indicated that he had returned to work, but was driving only short runs because he did not tolerate prolonged work hours. (Stevens Dep. 29.) The Plaintiff indicated that he was very uncomfortable and would get a lot of swelling in his foot by the end of the day. (Stevens Dep. 30.) Dr. Stevens's observed so much fluid in the foot's soft tissue that she determined that the Plaintiff had "swelling with pitting edema." (Stevens Dep. 30–31.) Dr. Stevens did not make any recommendations regarding the Plaintiff's work and activities because she previously released him to work as tolerated. (Stevens Dep. at 34–35.) Dr. Stevens believed that if the Plaintiff felt he was capable of doing his job, that he should, and again left the decision to the Plaintiff. (Stevens Dep. at 35.)

The Plaintiff returned to Dr. Stevens on July 6, 2004. His condition remained unchanged and he continued to have numbness and intermittent pain and swelling, especially after working throughout the day. Dr. Stevens did not recommend any further surgery. There was no change in Dr.

4

Stevens's recommendations regarding the Plaintiff's work and activities as tolerated. (Stevens Dep. 38, 42.)

Dr. Stevens did not see the Plaintiff again until March 25, 2005. On that date he still had numbness on the bottom of his left foot in the medial plantar nerve distribution. (Stevens Dep. 43.) The Plaintiff indicated that he was working in a job that did not require prolonged standing or heavy lifting. Dr. Stevens examination revealed good range of motion in the ankle, no swelling on that date, and good flexion and extension in the toes. (Stevens Dep. 45.) Dr. Stevens again recommended activity as tolerated and did not make any specific restrictions regarding his activities or employment. (Stevens Dep. 46–47.) She did not recommend any further medical care or treatment. (Stevens Dep. 47.) Dr. Stevens believes that the damage to the plantar nerve on the bottom of the Plaintiff's foot can never be repaired and it will never be normal. (Stevens Dep. 69–70.)

Dr. Stevens testified in her deposition that the swelling was chronic and if the Plaintiff was using his foot in a way that caused the swelling, the answer was to try to find a job that did not aggravate the Plaintiff's foot. (Stevens Dep. 94.) She also testified that when she told the Plaintiff that he could do activities as tolerated, she believed that it "would become a safety issue if [the Plaintiff] did not feel that he could adequately control the foot pedals to control the vehicle, that the patient would make a reasonable decision on his own that this is not safe for him to operate and continue in that occupation." (Stevens Dep. 97.) Dr. Stevens testified that the Plaintiff does not have normal protective sensation on the foot and that this could be a concern "if you have to operate foot pedals, from the standpoint of safety, . . . and they have to have quick reaction time, and you rely on proprioception and normal sensation." (Stevens Dep. 61.)

On April 12, 2005, Dominick DeTommaso, D.P.M., a board-certified podiatrist, conducted

5

an independent medical evaluation of the Plaintiff's foot injury. Dr. DeTommaso's report indicates that he did not recommend any restrictions or limitations on the Plaintiff's activities or employment at the time of his exam. Regarding the Plaintiff's future prognosis, Dr. DeTommaso reported that the Plaintiff would probably always have numbness and have to exercise care in not going barefoot and watching what he steps on because he would not feel it if he stepped on something sharp. Dr. DeTommaso indicated that short of that precaution, the Plaintiff would be fully functional and "be able to participate in any gainful employment that would require his extremities." (Pf.'s App. 82–83).

The Plaintiff no longer drives his truck. In February 2004, John Campbell, a truck driver, found out that the Plaintiff might be in need of a driver for his truck. (Campbell Dep. 9.) The Plaintiff eventually met with Campbell and around June 2004 hired him to drive his truck. Campbell testified that the Plaintiff told him there was a possibility he would not be able to drive his truck because when he tried, his foot immediately became swollen and painful. (Campbell Dep. 10.) In July 2004, the Plaintiff's CLD license was suspended for sixty days because he had two speeding tickets.

Bobby Alan Shipe has been a semi-truck driver for thirty-six years. He testified in a deposition that pain and swelling in the foot could affect safety and that there would be no way to alleviate the swelling while driving. Campbell also testified that a driver should have at least normal, if not above normal, strength and feeling in his left foot or leg to work the clutch and that drivers have to be able to feel the clutch as it begins to grab.

**DISCUSSION**

For purposes of the motion for partial summary judgment, the issue before the Court is whether a rational trier of fact could find, on the basis of the evidence in the record, that the Plaintiff's injury has impaired his future earning capacity as a truck driver. The issue is not whether the Plaintiff's injuries were the result of the Defendant's negligence or whether any other category of recovery is possible.[1]

The Defendant argues that the Plaintiff has no expert opinion, by way of either a medical expert or a vocational expert, that his left foot impairs his ability to work now or in the future. It contends that both Dr. Stevens or Dr. DeTommaso agree that the Plaintiff is not restricted from employment as a truck driver and that the Plaintiff has not identified another expert to opine that his injury precludes him from this continued employment. The Defendant argues that the Plaintiff cannot rely on his own opinion that his injury impaired his ability to drive his truck.

The Plaintiff disagrees with the Defendant's characterization of Dr. Stevens's testimony. The Plaintiff also submits that lay testimony from the Plaintiff and other long-time truck drivers supports his claim for lost earning capacity.

---

[1] The Defendant moved to strike the testimony of Supervalu employees on the grounds that it was not relevant to the Plaintiff's motion for partial summary judgment on the issue of damages. The Court agrees that this testimony goes to the issue of liability, which is not currently before this Court. However, the Court agrees with the following reasoning from the Southern District of Indiana:

> [It is] inappropriate in most cases—and this case is no exception—to strike materials submitted in support of or in opposition to a motion for summary judgment on the grounds of relevance. Although the issue of relevance is certainly one of the fundamental questions in sifting through expanded evidentiary material to determine whether the standard of Rule 56(c) has been met, the ordinary course this court follows is to determine whether and how those materials relate to the factual and legal issues which must be determined in ruling on the motion.

*Powers v. Runyon*, 974 F. Supp. 693, 697 (S.D. Ind. 1997). Accordingly, the Court will consider only that evidence which is relevant to the issue before it and deny the Defendant's motion to strike the Plaintiff's evidence as irrelevant.

Damages are particularly a jury determination. *Sears Roebuck and Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001). Indiana recognizes that a proper element of damage is the impairment of earning capacity which means the impairment of ability to engage in one's vocation as distinguished from loss of earnings. *Scott v. Nabours*, 296 N.E.2d 438, 441 (Ind. Ct. App. 1973).

> The concept of impaired earning capacity involves more than mere proof of permanent injury and pain. There must be evidence of probative value which relates the injury to an inability to engage in one's vocation. Like other damage issues this issue may be proven by both expert and non-expert testimony.

*Id.* at 441.

> Although the evidence need not show conclusively or with absolute certainty that earning capacity has been impaired, mere conjecture or speculation does not warrant an award of damages therefor in personal injury actions. . . . [T]he impairment of earning capacity must be shown with reasonable certainty or reasonable probability, and there must be evidence which will permit the jury to arrive at a pecuniary value of the loss.

*Id.* (quoting 18 A.L.R.3d 88, 97).

In its opening brief, the Defendant asserted that Dr. Stevens never concluded that the Plaintiff was unable to continue working as a truck driver. The Defendant argued that whether the injury to the Plaintiff's foot precludes him from operating a truck is a complex issue requiring expert medical and vocational testimony. It did not allege that Dr. Stevens was not an expert or that her opinion does not meet the requirements of Rule 702. However, in its reply brief and Motion to Strike, the Defendant urged the Court to dismiss any statements that Dr. Stevens made regarding the Plaintiff's ability to drive a truck because she, admittedly, is not a vocational expert. The Defendant also argues that the opinions of Shipe and Campbell should be stricken from the Court's consideration because they do not have personal knowledge about the nature and extent of the Plaintiff's foot injury.

The Court finds that the Plaintiff has presented evidence of probative value which relates his injury to an inability to engage in his truck driver vocation and that his request for damages for impairment of earning capacity is a question for the jury. As noted above, these damages may be proven by expert as well as non-expert testimony.

Regarding expert testimony, Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Rules of Evidence further provide:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Dr. Stevens is a medical doctor. As the Plaintiff's treating physician, she was aware of the extent of the Plaintiff's injuries. Her opinions that the Plaintiff could determine if he could tolerate his job responsibilities, that he would have difficulty with heavy lifting, loading, and unloading, that he continued to experience numbness and intermittent pain and swelling, especially after working throughout the day, that he should avoid jobs that caused his foot to swell, that his loss of normal protective sensation on the foot could be a concern for operating foot pedals safely, and other similar opinions, are not out of the realm of her expertise. Interestingly, the Defendant asks the Court to accept the testimony of Dr. De Tommaso regarding the Plaintiff's ability to work, but challenges this

same type of testimony from Dr. Stevens. The record does not reveal Dr. De Tommaso to be a vocational expert. There is no basis in the record for striking Dr. Stevens' opinions and the Court finds that her testimony creates a genuine issue of fact regarding damages for loss of future earning capacity.

The testimony of Shipe and Campbell is also admissible. First, their explanation of what is required to drive a truck is not an "opinion or inference" that must meet the requirements of Rule 701. Second, the opinions they do provide are consistent with Rule 701. Shipe's opinion that while working as a truck driver, opportunities to alleviate swelling are not readily available, is based on his perception, helpful to determining a fact in issue, and is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Likewise, Campbell, as a long time truck driver, can offer his opinion that a driver should have at least normal, if not above normal, strength and feeling in his left foot or leg to work the clutch and that drivers have to be able to feel the clutch as it begins to grab. Although Campbell and Shipe are not qualified to testify whether the Plaintiff's particular injury precludes him from engaging in his chosen vocation, they can offer their testimony of what is required of the job and even how those duties might be affected by a painful and swollen foot. Their testimony, in conjunction with the testimony of Dr. Stevens and the Plaintiff himself, places the Plaintiff's claim for damages beyond mere conjecture or speculation and creates a genuine issue of fact for the jury.

The cases cited by the Defendant do not warrant a different result. For example, in *Parra v. Atchinson, Topeka and Santa Fe Railway Co.*, 787 F.2d 507 (10th Cir. 1986), the plaintiff's own expert medical testimony refuted his claim for loss of future earnings. In that case, the essence of the doctor's testimony was that the plaintiff suffered from a congenital back disorder which made

him more susceptible to lower back injury. He testified that the plaintiff's unstable back would have disqualified him from work as a heavy laborer had it been detected. The court stated that expert medical testimony was necessary to establish that a loss of future earnings capacity was caused by such a non-obvious injury and the plaintiff's expert testimony actually refuted the causal connection between his injury and his diminished capacity for heavy labor. The doctor also stated that the plaintiff's back was more stable after surgery than prior to his accident. Thus, the court found that it was not proper for plaintiff to be compensated for future wages from heavy labor for which his preexisting congenital back disorder had already disqualified him and the trial court erred in instructing the jury on the value of future earnings from heavy labor as an element of plaintiff's damages. *Parra*, 787 F.2d at 509. The *Parra* case is distinguishable from the Plaintiff's claim, which does not involve a non-obvious injury, a pre-existing condition, or evidence refuting a causal connection between the Plaintiff's foot injury and his capacity to drive a truck.

The Defendant's citation to *Porter v. Whitehall Laboratories, Inc.*, 791 F. Supp. 1335 (S.D. Ind. 1992), likewise has no application to this case. The Defendant cites *Porter* in support of its argument that the testimony of Shipe and Campbell should be stricken. In *Porter*, the court stated that expert testimony was required to establish whether the plaintiff's acute renal failure was an iatrogenic reaction to ibuprofen because it was a fact outside of the understanding of lay jurors. 791 F. Supp. at 1342. Shipe's and Campbell's testimony is not akin to testimony regarding complex medical causation.

The Plaintiff has presented sufficient evidence to allow his claim for loss of future earning capacity to be heard by a jury. The Defendant has not established that summary judgment is appropriate because no reasonable jury could find that the Plaintiff's injury precludes him from

engaging in his occupation as a truck driver.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Partial Summary Judgment [DE 21] is DENIED and the Defendant's Motion to Strike [DE 36] is DENIED.

SO ORDERED on November 21, 2005.

                                        s/ Theresa L. Springmann
                                        THERESA L. SPRINGMANN
                                        UNITED STATES DISTRICT COURT